IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW JERSEY

| | |
|---|---|
| United of Omaha Life Insurance Company,<br><br>Plaintiff,<br><br>v.<br><br>George Williams, Steven Costello, and John Does 1-10,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF** |

Plaintiff, United of Omaha Life Insurance Company ("United"), by and through its attorneys, Drinker Biddle & Reath LLP, hereby files this Complaint for Declaratory Judgment and other relief, and in support thereof, alleges and states as follows:

## INTRODUCTION

1. This is an action for declaratory judgment under 28 U.S.C. § 2201 stemming from the fraudulent procurement of a $450,000 life insurance policy (the "Williams Policy") on the life of George Williams ("Williams"). United is entitled to the relief it seeks because the Williams Policy was not supported by a valid insurable interest at inception, as demonstrated independently by each of the following facts: (i) at the time the Williams Policy was issued there was an agreement or understanding that the Williams Policy was to be acquired for the benefit an individual or individuals having no insurable interest in the life of Williams; (ii) the Williams Policy did not and was never intended to protect against an actual risk of loss facing Williams's family in the event of his death; (iii) Williams never paid one cent of premium toward the Williams Policy; and (iv) Williams received financial consideration in order to secure his role in the procurement of the Williams Policy.

2. Specifically, in the application for the Williams Policy and accompanying documents, United asked certain questions intended to discern, among other things, whether Williams was receiving a financial incentive to obtain the Williams Policy, whether the premiums for the Williams Policy would be financed by third parties, and whether the Williams Policy was intended for the benefit of an individual or individuals lacking an insurable interest in Williams's life. Upon information and belief, the Defendants and others acting on their behalf, provided false information in response to these questions. Had United known: (i) the true purpose for procuring the Williams Policy; (ii) that the premiums for the Williams Policy would be paid by an unrelated third party with no insurable interest in the life of Williams; (iii) that the Williams Policy was intended for the benefit of an individual or individuals lacking an insurable interest in Williams's life; or (iv) that Williams was receiving a financial incentive in order to procure the Williams Policy, United would have declined to issue the Williams Policy.

3. Because the Williams Policy was procured pursuant to a pre-existing agreement or understanding that it would benefit one lacking an insurable interest in his life, the Williams Policy was not procured in good faith. Accordingly, the Williams Policy was not merely the product of fraud, but was, in its inception, an illegal wagering contact.

4. United thus seeks equitable relief in the form of a declaration that the Williams Policy is void *ab initio* because the Williams Policy lacked a valid insurable interest at issuance. United further seeks a declaration that United is entitled to retain some or all of the premium paid to it in connection with the Williams Policy. To the extent that United is not entitled to retain some or all of the premium paid for the Williams Policy, United alternatively seeks equitable relief in the form of a declaration that United is entitled to offset any return of premium by the costs it incurred in connection with the Williams Policy.

5. United will continue to treat the Williams Policy as in-force unless and until it receives the relief it seeks from the Court in this declaratory judgment action (and/or the Williams Policy otherwise lapses). United's treatment of the Williams Policy as in-force is not a waiver of any of the positions asserted in this action or any other rights under the Williams Policy or at law.

## PARTIES

6. Plaintiff United is a Nebraska company with its principal place of business in Omaha, Nebraska, and is deemed to be a citizen of Nebraska.

7. Upon information and belief, Defendant Williams is a citizen of the State of Arizona with an address of 13026 N. Cave Creek Road, #201, Phoenix, AZ 85022.

8. Upon information and belief, Defendant Steven Costello ("Costello") is a citizen of the State of California with an address of 225 N. Harvard Boulevard, Los Angeles, CA 90004.

9. United joins as defendants Does 1 through 10, who are individuals and/or entities the identity of which are presently unknown. United is unaware of the true names and capacities of the defendants sued as Does 1 through 10, inclusive, and therefore sues these defendants by such fictitious names. United will amend this complaint to allege the true names and capacities of Doe defendants when ascertained. United believes Does 1 through 10 have participated in the scheme as described more fully herein. United is entitled to relief as to each of the Doe defendants under the theories described in this complaint.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1), insofar as the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs, and there is complete diversity between Plaintiff and Defendants.

11. This Court has personal jurisdiction over these defendants because, among other things, at the time the Williams Policy was applied for and issued, Williams and Costello were residents of New Jersey and the Williams Policy was delivered to and received in New Jersey.

12. Venue properly lies in this Court pursuant to 28 U.S.C. § 1391 because at the time the Williams Policy was applied for issued, both Williams and Costello were residents of New Jersey, the Williams Policy was delivered to and received in New Jersey, the fraudulent scheme described in this Complaint was directed at United in this judicial district, and a substantial part of the events giving rise to this claim occurred within this judicial district.

## FACTUAL BACKGROUND

### A. The Scheme In This Case

13. In or around July 2010, Williams, Costello, and other unknown parties identified above as Does 1-10 (the "Scheme Promoters") concocted a scheme to procure from United a $450,000 policy of life insurance on Williams, who at the time was 67 years old.

14. Upon information and belief, pursuant to this scheme, (i) the Williams Policy would be procured pursuant to a pre-conceived plan to benefit an individual or individuals lacking an insurable interest in Williams's life; (ii) an application to insure the life of Williams would be submitted to United's home office in Nebraska; (iii) third parties would advance and/or loan the funds necessary to pay premium for the policy; and (iv) Williams would receive a financial incentive for his role in the procurement of the Williams Policy (hereinafter, the "Scheme").

15. Upon information and belief, pursuant to the Scheme, Williams was advised by the Scheme Promoters that he could obtain free life insurance and/or that he would be compensated for his participation in the transaction.

B.   **Application for the Williams Policy**

16.   In furtherance of the Scheme, on or about July 29, 2010, the Scheme Promoters submitted an application for life insurance ("the Application") to United seeking a $450,000 policy of life insurance on Williams. A true and correct copy of the Application, redacted to protect private information, is attached hereto as Exhibit A. At the time of the submission of the Application to United, it was understood and intended by the Scheme Promoters and other as of yet unknown parties that the Williams Policy would ultimately benefit an individual or individuals with no insurable interest in Williams's life.

17.   In the Application, Williams was identified as both the proposed insured and owner of the Williams Policy. *See* Exhibit A, p. 1. The Application contemplated semi-annual premium payments of $6,392.00. *See id.*

18.   The Application identified George Williams, Jr. and Steven Williams, the sons of Williams, as the intended beneficiaries of the Williams Policy. *See* Exhibit A, p. 1. It was, however, understood and intended by the Scheme Promoters prior to, and at all times following, the submission of the Application, that neither George Williams, Jr. nor Steven Williams would receive the death benefit from the Williams Policy, and that the right to receive the death benefit due under the Williams Policy was intended to benefit an individual or individuals with no insurable interest in Williams's life.

19.   Upon information and belief, the Application contained numerous fraudulent misrepresentations intended to conceal from United the true purpose for the Williams Policy. Specifically, in the Application, in response to the question "Have you or any person proposed for insurance been offered cash, or any other consideration for obtaining this policy?" Williams answered "No." *See* Exhibit A, p. 2.

20. In the Application, in response to the question "Are you or any Proposed Insured planning to enter into a premium finance arrangement to pay any premium payments due under this policy?" Williams answered "No." *See* Exhibit A, p. 2.

21. In the Application, in response to the question "Do you or any person proposed for insurance intend to sell or transfer ownership to a third party in the next five years, or have you sold or transfer ownership of a policy to a third party in the past five years?" Williams and "No." *See* Exhibit A, p. 2.

22. Williams further represented that the purpose for the procurement of the Williams Policy was "income replacement." *See* Exhibit A, p. 3.

23. Upon information and belief, each of these representations was false.

24. The "Agreement" portion of the Application bears a signature for Williams, and states that it was signed on July 23, 2010 in Wachtung, New Jersey. *See* Exhibit A, p. 6.

25. In the "Agreement" portion of the Application, it was represented to United that "[a]ll answers in this application are true and complete, to the best of my knowledge and belief, and will be relied upon by [United] to determine insurability. The statements and answers in the application are the basis for any policy issued by [United], and no information about them will be considered to have been given to [United] unless it is stated in the application. Any incorrect or misleading answers may void this application and any issued policy effective the Issue date." *See* Exhibit A, p. 6.

26. In the "Agreement" portion of the Application, it was further agreed that "Coverage under the issued policy will become effective only if and when: (a) the full initial premium is paid or, if paid by electronic funds transfer, the full initial premium is received by [United], (b) [United] has been notified of any changes in either the health or habits of any

person proposed for insurance between the date the application is approved for issue and the date the policy is delivered, and (c) the policy is delivered and all delivery requirements (including a signed good health statement if required) are completed during the lifetime of the proposed insured." *See* Exhibit A, p. 6.

27. Thus, in completing the Application and related documents, Williams knew that he was required to provide truthful, accurate, and honest responses to the questions presented. Furthermore, Williams knew that United would rely upon the statements recorded on the Application in determining whether to issue the Williams Policy with the face amount requested, or whether to issue the Williams Policy at all.

28. Upon information and belief, the Scheme that was devised by the Scheme Promoters involved procuring the Williams Policy without requiring Williams, any of Williams's family members, or anyone with a valid insurable interest in Williams's life, to pay any of the associated costs for the Williams Policy, including the premium; rather, those costs were paid by third parties who were strangers to Williams. These facts, however, would be concealed from United.

29. Indeed, the misrepresentations in the Application were part of a fraudulent scheme perpetrated by Williams and the Scheme Promoters to engage in a transaction through which the Williams Policy would be acquired for the benefit of an individual or individuals lacking an insurable interest in Williams's life.

30. The misrepresentations in the Application were made with the understanding and intent that they would be relied upon by United, and would mislead United into concluding that the Williams Policy was justified and supported by a valid insurable interest.

31. United did, in fact, reasonably rely upon the fraudulent misrepresentations in the Application when determining that Williams qualified for the Williams Policy. Had United known that any of the representations in the Application were false, United would have declined to issue the Williams Policy.

### C. Issuance of the Williams Policy and Subsequent Changes of Ownership

32. On August 20, 2010, in reliance upon the representations contained in the Application and related documents and information submitted to United by the Scheme Promoters, United ostensibly issued the Williams Policy bearing policy number UA9368546, with a death benefit of $450,000.

33. Shortly after the issue date of the Williams Policy, but prior to the delivery of the policy and the payment of the first required premium, and in furtherance and part of the Scheme, the Scheme Promoters submitted a change of ownership form to United (the "Ownership Change Form"), seeking to change the owner of the Williams Policy from Williams to Costello. A true and correct copy of the Ownership Change Form, redacted to protect private information, is attached hereto as Exhibit B. The Ownership Change Form identified Costello as an "uncle" of Williams, and states that Costello lives in Bayonne, New Jersey. *See* Exhibit B, p. 1.

34. The Ownership Change Form bears signatures for Williams and Costello, and states that it was signed on September 20, 2010, in Edison, New Jersey. *See* Exhibit B, p. 2.

35. Also in furtherance of the Scheme, on September 20, 2010, Anthony Costello[1] wrote a check in the amount of $4,625 to United for the initial premium due under the Williams Policy (the "Initial Premium").[2]

---

[1] Upon information and belief, "Anthony Costello" is an alias of Costello.

36.     Based on the submission of the Ownership Change Form, United reissued the Williams Policy showing Costello as the owner of the Williams Policy, and delivered the Policy to Costello. A true and correct copy of the Williams Policy, redacted to protect private information, is attached hereto as Exhibit C.

37.     Finally, a delivery receipt form for the Williams Policy, a precondition to the Williams Policy being placed in-force, was signed on October 5, 2010 by Williams and Costello. A true and correct copy of the Policy Delivery Form (the "Policy Delivery Form") is attached hereto as Exhibit D.

38.     Upon receipt of the Initial Premium and the executed Policy Delivery Form, United placed the Williams Policy in-force.

D.     **Further Implementation of the Scheme**

39.     On or about October 31, 2011, Costello submitted a change of beneficiary form, requesting to change the primary beneficiary under the Williams Policy to himself, and to change the contingent beneficiary under the Williams Policy to Lena Costello. A true and correct copy of the October 24, 2011 change of beneficiary request is attached hereto as Exhibit E.

40.     Upon information and belief, the October 31, 2011 change of beneficiary request was made in furtherance of the Scheme.

41.     On November 22, 2011, United wrote to Costello, confirming the October 31, 2011 change of beneficiary request. A true and correct copy of United's response to the October 31, 2011 change of beneficiary request is attached hereto as Exhibit F.

---

(Continued)

[2] In connection with the Ownership Change Form, it was also requested that premiums due under the Williams Policy be changed to quarterly payments. This check represents the first quarterly premium payment due under the Williams Policy.

42. Since the date that the Williams Policy was issued, Costello has paid all premiums due under the Williams Policy. To date, approximately $31,999 has been paid by Costello in premiums.

43. Upon information and belief, Williams received remuneration for his participation in the Scheme.

44. Further, Williams, Costello, and others were at all times acting in concert in order to fraudulently induce United to issue the Williams Policy and to arrange for Williams Policy to benefit an individual or individuals with no insurable interest in Williams's life.

E.   **Discovery of the Scheme**

45. Despite the carefully crafted scheme, William has recently embarked on an effort to gain control over the policy insuring his life.

46. Specifically, on January 10, 2013, Williams signed an affidavit stating that, among other things, the Williams Policy was intended to benefit his children (the "Williams Affidavit"). A true and correct copy of the Williams Affidavit is attached hereto as Exhibit G.

47. Williams further represents in the Williams Affidavit that, despite his execution of the Ownership Change Form, he was "alarmed" to learn that ownership of the Williams Policy had been changed. *See* Exhibit G, p 1.

48. William also represented in the Williams Affidavit that, despite the fact that Williams has never paid any premiums due under the Williams Policy and that all premiums were paid by Costello, he had never heard of Costello and that "he is not my nephew." *See* Exhibit G, p. 1.

49. Williams requests, in the Williams Affidavit, that the ownership of the Williams Policy revert to Williams and that the beneficiary of the Williams Policy be changed from Costello to Williams's sons, George Williams, Jr. and Steve D. Williams. *See* Exhibit G, p 1.

50. Williams further requests that all further premium notices be sent to him at an address in Arizona. *See* Exhibit G, p. 2.

## COUNT I

## DECLARATORY JUDGMENT – LACK OF INSURABLE INTEREST

51. United hereby incorporates by reference each and every averment contained in the preceding paragraphs as if set forth herein at length.

52. After a reasonable opportunity for discovery, it will be demonstrated that the Williams Policy was procured in bad faith by certain promoters, including but not limited to, certain of the Defendants. The Scheme Promoters did not have an insurable interest in the life of Williams and they always intended for the Williams Policy to benefit an individual or individual with no insurable interest in the life of Williams.

53. Upon information and belief, the Williams Policy was procured pursuant to an understanding and/or agreement predating the issuance of the Williams Policy, to procure the policy and transfer it to an individual or individual with no insurable interest in the life of Williams.

54. Upon information and belief, the Williams Policy was issued at the behest of, and/or procured in accordance with a plan initiated by the Scheme Promoters, none of whom possessed an insurable interest in the life of Williams under applicable law, and with the intent of transferring the Williams Policy to an individual or individual with no insurable interest in Williams's life.

55. After a reasonable opportunity for discovery, it will be demonstrated that the Defendants and those working in concert with them always intended and understood that the

Williams Policy would come to be owned by an individual or individual lacking an insurable interest in Williams's life.

56. It will also be demonstrated that, contrary to the representations that were made to United on the Application, the Williams Policy never protected against an actual risk of financial loss for Williams's family, that Williams only participated in the procurement of the Williams Policy due to the financial consideration he received, and that Williams never paid any premium toward the Williams Policy. Each of these facts establishes that the Williams Policy was not procured in good faith and therefore lacked an insurable interest at its inception.

57. Upon information and belief, the Williams Policy was procured solely for the benefit of an individual or individual lacking an insurable interest in Williams's life. In furtherance of this purpose, Williams made fraudulent misrepresentations regarding, among other things, the true purpose for the Williams Policy, whether or not Williams had been offered cash or other consideration for obtaining the Williams Policy, whether Williams planned to obtaining financing to pay the policy premiums, and whether Williams planned to sell or transfer ownership of the Williams Policy, all with the intention that United would rely on those misrepresentations when issuing the Williams Policy.

58. Each of the aforesaid fraudulent misrepresentations was material to United's decision to issue the Williams Policy, and United justifiably relied on these fraudulent misrepresentations when issuing the Williams Policy. Indeed, United would not have issued the Williams Policy had it known the true facts.

59. As such, United is entitled to a judicial declaration that the Williams Policy is an illegal wagering contract which is void *ab initio*.

60. Due to the fraudulent nature of this scheme, United is entitled to a judicial declaration that it is entitled to retain some or all of the premiums paid in connection with the Williams Policy. To the extent that the Court determines that United is not entitled to retain some or all of the premiums paid to it, United alternatively seeks equitable relief in the form of a declaration that United is entitled to offset any premium that must be returned by the costs it incurred in connection with the Williams Policy.

### RELIEF REQUESTED

WHEREFORE, United respectfully requests the entry of an Order by this Court as follows:

A. Declaring the Williams Policy void *ab initio* due to a lack of insurable interest at the inception of the Williams Policy;

B. Declaring that United is entitled to retain some or all of the premiums paid to it in connection with the Williams Policy;

C. An award of compensatory damages as warranted under law;

D. An award of United's attorneys' fees and costs, as determined by the Court and associated with seeking this judgment; and

E. An award of such further relief as this Court deems appropriate.

### COUNT II
### *(In the Alternative)*

### DECLARATORY JUDGMENT - DECLARATION
### AS TO OWNERSHIP OF THE WILLIAMS POLICY

61. United hereby incorporates by reference each and every averment of fact contained in the preceding paragraphs as if set forth herein at length.

62. In the alternative, if and only if, the Court determines the Williams Policy to be valid, United hereby seeks a judicial declaration as to the rightful owner of the Williams Policy.

63. Williams has contacted United stating the he has no knowledge of Costello and seeking to have ownership of the Williams Policy revert to Williams and that the beneficiaries of the Williams Policy be his sons, George Williams, Jr. and Steven D. Williams.

64. Nevertheless, Costello continues to hold himself out as the owner of the Williams Policy and remains listed as the owner of the Williams Policy.

65. By the terms of the Williams Policy, United cannot change policy ownership without a written request by Costello, as owner of the Williams Policy. *See* Exhibit B, p. 27.

66. Upon information and belief, Costello does not agree to Williams's request to change the ownership or beneficiaries of the Williams Policy.

67. Based on the potentially conflicting claims of Williams and Costello, United is at risk of suffering competing claims to entitlement of the ownership of the Williams Policy, and is uncertain as to the proper owner of the Williams Policy.

68. United is now seeking, by way of this claim for declaratory relief, certainty regarding the parties' respective rights to the ownership of the Williams Policy.

69. Based on the foregoing, there is an actual, justiciable controversy between Williams and Costello as to the rights of ownership to the Williams Policy.

70. In the event the Williams Policy is found to have been issued with a valid insurable interest, United would become subject to the potentially conflicting and competing claims of Williams and Costello to the ownership of the Williams Policy.

WHEREFORE, in the alternative, if and only if, the Court declares the Williams Policy valid, United respectfully requests the Court to:

A. Order Williams and Costello to assert their respective claims to the ownership of the Williams Policy without further involvement of United;

  B. Direct and declare the respective rights of Williams and Costello to the ownership of the Williams Policy;

  C. Discharge United from any and all liability in connection with, or arising out of this litigation, except for the obligation to honor a final non-appealable order from this Court with respect to the ownership of the Williams Policy;

  D. Enjoin and restrain Williams and Costello from commencing or further prosecuting any other proceedings in any state or United States court against United on account of the William Policy until this action is concluded;

  E. Award United its costs and attorneys' fees; and

  F. Grant any such other and further relief as this Court deems appropriate.

Date: April 23, 2013

**DRINKER BIDDLE & REATH LLP**

By: _____
Kevin L. Golden
500 Campus Drive
Florham Park, NJ 07932-1047
(973) 549-7000
kevin.golden@dbr.com

*Of Counsel*
DRINKER BIDDLE & REATH LLP
Stephen A. Serfass
stephen.serfass@dbr.com
*Attorneys for Plaintiff*
*United of Omaha Life Insurance Company*